**PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT**

v.

**HARRISBURG KNIGHTS OF CO-LUMBUS HOME ASSOCIA-TION, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 17, 2009.
Decided Oct. 19, 2009.
Publication Ordered Dec. 21, 2009.

. P. Richard Wagner, Harrisburg, for appellant.

Thomas M. Ballaron, Asst. Counsel, Harrisburg, for appellee.

BEFORE: LEAVITT, Judge, and BUTLER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

The Harrisburg Knights of Columbus Home Association (Licensee) appeals from an order of the Court of Common Pleas of Dauphin County (trial court), denying its appeal from an order of the Pennsylvania Liquor Control Board (the Board) affirming the decision and order of the Administrative Law Judge (ALJ) and dismissing its appeal. We now affirm.

Licensee is the holder of a Pennsylvania Liquor License, No. CC–5300, for its premises located at 145 Peach Street, Harrisburg, Dauphin County, Pennsylvania. On November 29, 2007, the Pennsylvania State Police, Bureau of Liquor Control Enforcement (the Bureau), filed a citation against Licensee alleging that it had violated the Local Option Small Games of Chance Act (LOSGCA), Act of December 19, 1988, P.L. 1262, *as amended,* 10 P.S. §§ 311–327, and the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101–10–1001.

Specifically, the first count in the citation alleged that Licensee:

> failed to maintain complete and truthful records covering the operation of the licensed business for a period of two (2) years immediately preceding August 13, 2007, concerning [LOSGCA], in violation of Sections 471 and 493(12) of the Liquor Code, 47 P.S. §§ 4–471 and 4–493(12), Section 311 of LOSGCA, 10 P.S. § 311 and Section 901 of the Department of Revenue Regulations, 61 Pa. Code § 901.[1]

(R.R. at 12a–13a).

The citation's second count alleged that for approximately twenty-nine consecutive weeks Licensee awarded more than $5,000.00 in cash as prize money in violation of Section 471 of the Liquor Code and Section 315(b) of LOSGCA.[2] The citation further indicated that a hearing would be scheduled before an ALJ to "show cause as to why such license should not be suspended or revoked or a fine imposed." (R.R. at 13a).

---

1. Section 493(12) of the Liquor Code provides that it shall be an unlawful act for any liquor licensee to fail to keep on the licensed premises for a "period of at least two years complete and truthful records covering the operation of his licensed business." 47 P.S. § 4–493(12).

2. Section 315(b) of LOSGCA provides that "[n]o more than $5,000 in cash or merchandise shall be awarded by any eligible organization in any seven-day period." 10 P.S. § 315(b).

Subsequently, on December 4, 2007, Albert Chaki, Licensee's president, signed a "statement of waiver, admission and authorization" form. The waiver form indicated that Licensee was admitting to all violations contained in the citation; admitting that the Bureau had complied with the notice requirements; waiving the right to a hearing; waiving the right to appeal the adjudication and authorizing the ALJ to enter an adjudication based on the summary of the facts as presented. (R.R. at 15a). This waiver form also indicated that the possible penalties authorized by law for each of the violations was a license suspension and/or revocation; a license suspension and/or revocation of any ancillary permit, including but not limited to the Amusement Permit or the Sunday Sales Permit; and/or the imposition of a fine of $50.00 to $1,000.00. Further, the waiver form indicated that if the violation was the third or subsequent violation of any of the offenses referred to in Section 471 of the Liquor Code or the Crimes Code, Act of December 6, 1972, P.L. 1482, *as amended,* 18 Pa.C.S. §§ 101–1110, within a four year period, the ALJ was required to impose a license suspension upon Licensee.

On January 15, 2008, the ALJ sustained the citation and imposed a $1,000.00 fine for each of the two counts, plus a ten day suspension of Licensee's liquor license. The ALJ found that during the Bureau's routine inspection of Licensee's records, it was discovered that the records did not reflect all of the prizes awarded or all of the games' serial numbers. The ALJ found that the name of the person who won more than $100.00 was missing and that Licensee's routine payouts exceeded

the $5,000.00 prize limit in any seven day period.[3] Licensee filed an appeal to the Board alleging that the Bureau did not have jurisdiction over the administration of small games of chance because jurisdiction rested solely with the Pennsylvania Department of Revenue (the Department) and law enforcement officials, neither of which included members of the Bureau.

By opinion and order with a mailing date of April 2, 2008, the Board affirmed the ALJ's order and dismissed Licensee's appeal. The Board noted that Licensee had executed a waiver admitting to all violations and authorizing the ALJ to enter an adjudication; thus, it had voluntarily relinquished its right to appeal the ALJ's decision. The Board rejected Licensee's argument that an appeal on jurisdictional grounds was not subject to waiver because it did not cite any authority in support of that proposition. However, despite its conclusion that the issue was waived, the Board addressed the jurisdictional issue and concluded that the Bureau did have jurisdiction in matters concerning LOSGCA because of the authority conferred on it by the language "other sufficient cause shown" as set forth in Section 471 of the Liquor Code. The Board noted that said language had been acknowledged as conferring authority on the Bureau by the Pennsylvania Supreme Court in *Pennsylvania Liquor Control Board v. TLK, Inc.,* 518 Pa. 500, 544 A.2d 931 (1988). Licensee subsequently filed an appeal to the trial court.

Before the trial court, Licensee argued that the Pennsylvania Legislature had created the Bureau and made it responsible for enforcing the Liquor Code and any regulations promulgated thereto, but had

3. The ALJ noted that Licensee's records indicated that they were "touting their seven day totals on a monthly basis, leaving any prizes awarded beyond the fourth seventh day period in its own grouping" and that such a practice "skewed the actual seven days totals for prizes paid out." (R.R. at 18a).

not provided any authority for the Bureau to enforce the provisions of LOSGCA. Licensee argued that although Section 323 of LOSGCA, 10 P.S. § 323, provided that the Department was responsible for its enforcement, as well as the local district attorney, and state, county or local law enforcement officials, and that the "Bureau" was not included within the definition of a law enforcement official. Licensee argued that the distinction was "critical" as any enforcement of LOSGCA required a determination of probable cause by the district attorney who would then "file a complaint" against the offender. (R.R. at 54a). Licensee argued that the violations involved in the present matter were founded on a "routine inspection" and not probable cause. *Id.* Licensee also argued that the notice contained in the waiver form indicated that the authority to suspend a liquor license was "clearly based upon an alleged violation of the Crimes Code" and that the notice did not show that the Licensee's alleged violations could adversely impact its liquor license. (R.R. at 56a).

Finally, Licensee argued that the "other sufficient cause" language of Section 471 of the Liquor Code, upon which the ALJ relied in justifying the suspension of its license, was "inapplicable herein." *Id.* Licensee noted that a review of *TLK, Inc.* revealed that the Supreme Court had upheld the suspension of a liquor license based upon the illicit drug transactions of one of its employees, which actions were not present here. Thus, Licensee argued that the authority garnered from the language "other sufficient cause shown" was predicated upon the issuance of a citation because of illegal drug or criminal activities on the premises. Licensee argued that to allow the Bureau to suspend its

liquor license under the "such other sufficient cause shown" language for a violation of LOSGCA would expand the jurisdiction of the Liquor Code beyond that intended by the Legislature and would "give *carte blanc*" authority to the Bureau to cite for violations of any law whatsoever. (R.R. at 57a).

By memorandum opinion filed November 18, 2008, the trial court denied Licensee's appeal. The trial court reviewed the matter *de novo* and did not take any additional evidence. The trial court noted that the facts were not in dispute and, thus, the issue was one of a question of law: whether the Bureau had jurisdiction to cite Licensee for violating the Liquor Code based upon an underlying violation of LOSGCA.[4] The trial court noted that Section 471 of the Liquor Code provided the right to issue citations to liquor licensees, such as Licensee, for certain specified violations as well as for "any other sufficient cause shown." (R.R. at 62a). The trial court further noted that the Pennsylvania Superior Court had recognized the "other sufficient cause" language more than six decades ago in *Commonwealth v. Lyons,* 142 Pa.Super. 54, 15 A.2d 851 (1940), and that the Supreme Court had also recognized this language in *TLK, Inc.* The trial court noted that courts have "upheld the Board's imposition of penalties for a variety of conduct not expressly prohibited by the Liquor Code but reasonably related to the sale and use of alcoholic beverages on licensed premises." (R.R. at 64a). The trial court concluded that the Bureau had properly investigated and cited Licensee for violations of the Liquor Code, vis-à-vis violations of LOSGCA, and both the ALJ and the Board had subject matter jurisdiction to adjudicate the matter and impose

---

4. The trial court noted that the issue of subject matter jurisdiction may be raised at any stage of the proceedings and, thus, concluded that the issue had not been waived by Licensee.

sanctions. Finally, the trial court concluded that the Bureau "properly maintained jurisdiction to issue a [c]itation for violation of the Liquor Code as a result of the underlying LOSGCA offenses as they constituted 'other sufficient cause shown' under the Liquor Code." (R.R. at 62a). Licensee then filed the present petition for review with this Court.

On appeal,[5] Licensee first argues that the Legislature vested authority in the enforcement of LOSGCA solely with the Department and not with the Bureau, and, thus, because the Bureau issued the citation and had no authority to do so, the citation is void. Licensee agrees that the Bureau has been authorized to enforce enumerated violations of the Liquor Code as well as violations of specific other acts pursuant to Section 211 of the Liquor Code, 47 P.S. § 2–211(2), but notes that there is no reference to LOSGCA in that Section of the Liquor Code. Thus, Licensee argues that the Bureau is not included in the statutory definition of those entities which have been designated with the power to enforce LOSGCA. We disagree.[6]

■ Section 211 of the Liquor Code provides that the Bureau is a subdivision of the Pennsylvania State Police authorized to enforce the Liquor Code and its attendant regulations. *See* 47 P.S. § 2–211(a). Section 323(a) of LOSGCA provides that "[n]othing in this act shall be interpreted to restrict the power of State, county or local law enforcement officials to conduct investigations and enforce the pro-

visions of this act." 10 P.S. § 323(b). Moreover, according to Section 313 of LOSGCA, a law enforcement official is defined as a "municipal police officer, a member of the Pennsylvania State Police, the sheriff of a county or a deputy sheriff." 10 P.S. § 313. Thus, as the Bureau is a subdivision and member of the Pennsylvania State Police, it is a law enforcement official. Additionally, in 1987, this Court noted that the Liquor Code was reenacted and amended such that the enforcement powers previously possessed by the Board were given to the Bureau. *See Atiyeh v. Pennsylvania Liquor Control Board,* 157 Pa.Cmwlth. 28, 629 A.2d 182 (1993), *petition for allowance of appeal denied,* 536 Pa. 649, 639 A.2d 35 (1994). We further recognized that it is the Bureau which issues citations for violations of the liquor laws by a licensee and the charges contained in the citation are then heard by an ALJ who decides whether a violation has occurred and whether a fine should be imposed and/or the license should be suspended or revoked. *Atiyeh.*

Next, Licensee argues that the Bureau does not obtain its enforcement authority from the language "such other sufficient cause" contained in Section 471 of the Liquor Code, because that language was meant to only apply to the penalty that may be imposed by the ALJ and was not meant to confer authority on the Bureau for the enforcement of violations of other acts. We disagree.

---

**5.** This Court's standard of review in a Liquor Code enforcement appeal is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Wilner,* 687 A.2d 1216 (Pa. Cmwlth.1997).

**6.** We initially note that the trial court correctly concluded that the issue of jurisdiction can be raised at any point in the proceedings. *See*

*Alexander v. Department of Transportation, Bureau of Driver Licensing,* 583 Pa. 592, 880 A.2d 552 (2005) (noting that subject matter jurisdiction cannot be waived and may be raised at any stage in the litigation). Thus, although Licensee may have waived its right to an appeal from the ALJ with respect to other issues by executing the waiver form, it did not waive the jurisdictional issue.

Section 471 of the Liquor Code provides that:

(a) Upon learning of any violation of this act or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or of any regulations of the board adopted pursuant to such laws, or any violation of any laws of this Commonwealth or of the Federal Government relating to the payment of taxes on liquor, alcohol or malt or brewed beverages by any licensee within the scope of this article, his officers, servants, agents or employes, or **upon any other sufficient cause shown,** the enforcement bureau may, within one year from the date of such violation or cause appearing, cite such licensee to appear before an administrative law judge, not less than ten nor more than sixty days from the date of sending such licensee, by registered mail, a notice addressed to him at his licensed premises, to show cause why such license should not be suspended or revoked or a fine imposed, or both. The bureau shall also send a copy of the hearing notice to the municipality in which the premises is located.

(b) Hearing on such citations shall be held in the same manner as provided herein for hearings on applications for license. Upon such hearing, if satisfied that any such violation has occurred or for other sufficient cause, the administrative law judge shall immediately suspend or revoke the license, or impose a fine of not less than fifty dollars ($50) nor more than one thousand dollars ($1,000), or both, notifying the licensee by registered letter addressed to his licensed premises . . . .

(c) The administrative law judge may consider the licensee's prior citation history when imposing a penalty. If the violation in question is a third or subsequent violation of any offense referred to in subsection (b) or Title 18 of the Pennsylvania Consolidated Statutes (relating to crimes and offenses), occurring within a period of four years, the administrative law judge shall impose a suspension or revocation.

47 P.S. § 4–471(a)-(c) (emphasis added).

■ As to the Bureau's authority to enforce LOSGCA and issue citations under the Liquor Code, Licensee is correct that there are no provisions of LOSGCA which provide the Bureau with such authority. It is well established that "violations of criminal laws other than the Liquor Code may constitute sufficient cause for revocation or suspension of a liquor license" pursuant to Section 471 of the Liquor Code. *TLK, Inc.,* 518 Pa. at 504, 544 A.2d at 933 (citations omitted). Courts have interpreted Section 471 of the Liquor Code as providing similar authority for the imposition of penalties for a variety of conduct not expressly prohibited by the Liquor Code, but reasonably related to the sale and use of alcoholic beverages, including gambling.

In *V.J.R. Bar Corporation v. Pennsylvania Liquor Control Board,* 480 Pa. 322, 390 A.2d 163 (1978), the Supreme Court relied upon the "any other sufficient cause shown" language to uphold the revocation of the liquor license based upon gambling by the licensee even though the criminal charges were later dismissed and gambling was not an enumerated offense in the Liquor Code. In *V.J.R. Bar Corporation,* the Supreme Court noted that any other conclusion "would thwart the command of the Legislature that all the provisions of the [Liquor Code] 'shall be liberally construed' for the protection of the public welfare, health, peace and morals of the people of the Commonwealth." *V.J.R. Bar Corporation,* 480 Pa. at 323, 390 A.2d at 164; *see also Matter of Revocation of Restaurant Liquor License No. R–12122,* 78 Pa.Cmwlth. 159, 467 A.2d 85 (1983)

(concluding that the inclusion of the "other sufficient cause" language reflected the Legislature's recognition that the remedial purposes of the Section 471 of the Liquor Code would not best be served by an attempt to catalogue all possible grounds for disciplinary actions against licensees); *Shenanigans of Lake Harmony, Inc. v. Pennsylvania Liquor Control Board,* 654 A.2d 166 (Pa.Cmwlth.1995) (noting that although Section 471 of the Liquor Code did not expressly set forth the power to suspend an ancillary permit allowing sales on Sunday, it was necessarily implied as within the Legislative grant and to find otherwise would be unreasonable and illogical).

■ Finally, Licensee argues that the ALJ improperly imposed a license suspension in excess of his authority because it did not have notice that a potential suspension of a liquor license could occur based upon the alleged violations. Licensee argues that the notice only indicated that a suspension was required if the violation was the third one or more or if a prior suspension had occurred within a four-year period. Licensee argues that a violation of LOSGCA "is a different penalty and does not appear as a penalty in the Liquor Code." (Licensee's Brief at 13). Licensee argues that it should be noted that "even though the violation is a criminal offense, criminal proceedings have, without question, a completely different procedure than civil proceedings under the Pennsylvania Liquor Code" and that, as LOSGCA does not fall under the Liquor Code or the Crimes Code, a violation of LOSGCA does not give rise to a license suspension. (Licensee's Brief at 13). Again, we disagree.

With regard to notice of a potential license suspension or revocation, Section 471(a) provides that the Bureau may:

within one year from the date of such violation or cause appearing, cite such licensee to appear before an administra-

tive law judge, not less than ten nor more than sixty days from the date of sending such licensee, by registered mail, a notice addressed to him at his licensed premises, to show cause why such license should not be suspended or revoked or a fine imposed, or both.

47 P.S. § 4–471(a).

Additionally, this Court has concluded that a de novo hearing before a trial court, subsequent to the Board's imposition of a ten-day suspension on a liquor license for discounting the price of alcoholic beverages, would have cured any due process problem involving lack of adequate notice of violations to the licensee. *See In re Locy,* 125 Pa.Cmwlth. 481, 557 A.2d 1164, *petition for allowance of appeal denied,* 522 Pa. 621, 563 A.2d 889 (1989).

According to the citation, Licensee was instructed that a hearing was to be scheduled before an ALJ "to show cause why such license should not be suspended or revoked or a fine imposed." (R.R. at 13a). The admission, waiver and authorization form, included with the citation, signed by Mr. Chaki on Licensee's behalf and submitted to the ALJ, indicated that "Licensee admits the [Bureau] has complied with the applicable notice requirements of the Liquor Code." (R.R. at 15a).

Additionally, the admission, waiver and authorization form indicated that:

THE PENALTIES AUTHORIZED BY LAW ARE:

License suspension and/or revocation; suspension and/or revocation of any ancillary permit, including but not limited to the Amusement Permit or Sunday Sales Permit; and/or fine of:

$50 to $1,000 as to Count(s) No. 1, 2 and/or $1,000 to $5,000 as to Count(s) No. N/A

If a violation is the third or subsequent violation of any of the offenses referred

to in subsection 471(b) of the Liquor Code or Crimes Code within a four (4) year period, the Administrative Law Judge must, at least, impose a suspension.

(R.R. at 15a).

Thus, it appears that Licensee's argument concerning its lack of notice of the possible penalties, including a license suspension or revocation, is without merit. Finally, Licensee's argument concerning the criminal nature of a license suspension and the impropriety of its imposition is also without merit. A proceeding to suspend or revoke a license under the Liquor Code has always been considered civil/administrative and not . criminal in nature. *See In re Tahiti Bar, Inc.*, 395 Pa. 355, 150 A.2d 112, *appeal dismissed*, 361 U.S. 85, 80 S.Ct. 159, 4 L.Ed.2d 116 (1959).

Accordingly, the trial court's order is affirmed.

### ORDER

AND NOW, this 19th day of October, 2009, the order of the Court of Common Pleas of Dauphin County is hereby affirmed.